UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JOHNSON,

        Plaintiff,

v.

BONITA HOFFNER,
UNKNOWN VEST, and
B. SCOTT,

        Defendants.

                                      /

Case No. 1:16-cv-663

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983.  This matter is now before the Court on defendants' motion for summary judgment (ECF No. 9).

      **I.**      **Plaintiff's complaint**

Plaintiff filed this action against three MDOC employees: Lakeland Correctional Facility (LCF) Warden Bonita Hoffner; LCF Deputy Warden Vest (now retired); and LCF Transfer Coordinator B. Scott.  Plaintiff's allegations are summarized as follows.  Plaintiff was incarcerated at LCF from January 15, 2010 until August 27, 2013, when the MDOC transferred him to the Chippewa Correctional Facility (URF).  Compl. (ECF No. 1, PageID.3-4).  The gist of plaintiff's claim is that he was transferred in retaliation for grieving and suing MDOC employees with respect to Ramadan meals:  in 2012 and 2013 he advised prisoners who were members of the Nation of Islam study group to file grievances if Ramadan meals were "inadequate;" he filed grievances in 2013; he obtained an order adverse to the MDOC as a plaintiff in *Heard v. Finco*, 1:13-cv-373; and

he assisted two other prisoners to prepare a lawsuit regarding Ramadan 2013. *Id*. at PageID.1-4. In August 2013, Deputy Warden Vest performed a security classification screen review to transfer plaintiff. *Id*. at PageID.4. The transfer was approved by "Defendant B. Scott." *Id*. For his relief, plaintiff seeks declaratory relief, a transfer to a different correctional facility, and monetary damages in the amount of $1,050,000.00.

## II. Defendants' motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Discussion

#### 1. Exhaustion

##### a. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

      **b.**      **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

      **c.**      **Discussion**

After reviewing the six Step III grievance appeals related to plaintiff's incarceration at LCF (LCF-13-09-0983-17b, LCF-13-08-0857-09a, LCF-13-08-0835-09a, LCF-13-02-0166-01g, LCF-12-08-0910-28e, and, LCF-12-01-0077-15a) defendants concede that plaintiff exhausted his administrative remedies with respect to Warden Hoffner and Inspector Vest. Defendants' Brief (ECF No. 10, PageID.65). However, defendants point out that none of the grievances address any

claims against defendant "LCF Transfer Coordinator B. Scott." It appears that there is no such person. In a later paper filed in the Court, plaintiff stated that he mistakenly named Bernard Scott "as the defendant responsible for his alleged retaliatory transfer." *See* Plaintiff's Decl. (ECF No. 15, PageID 208). As discussed, *infra*, defendant Bernard Scott does not work at LCF. He is employed by the MDOC in the Classification Unit as a Classification Specialist for Correctional Facilities Administration (CFA) in Lansing, Michigan. *See* Bernard Scott Aff. (ECF No. 10-8, PageID.170). Accordingly, defendant Scott should be granted summary judgment for lack of exhaustion.

### 2. Warden Hoffner

Beyond an introductory statement that defendant Hoffner was the Warden at LCF during the relevant time period, plaintiff failed to allege any specific action against the Warden. "Personal involvement is necessary to establish section 1983 liability." *Murphy v. Grenier*, 406 Fed.Appx. 972, 974 (6th Cir. 2011). "It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999). Here, plaintiff's complaint did not allege any particular wrongful conduct committed by Warden Hoffner.

In addition, plaintiff cannot hold Warden Hoffner responsible to the actions of other MDOC employees. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Department of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*,

5

729 F.2d 416, 421 (6th Cir. 1984). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* Accordingly, Warden Hoffner should be granted summary judgment.

### 3. First Amendment retaliation claim against Inspector Vest

Plaintiff's remaining claim is that defendant Inspector Vest transferred him to a correctional facility in Michigan's Upper Peninsula in retaliation for filing grievances and lawsuits. *See* Compl. at PageID.5. To prove a First Amendment retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

#### a. Plaintiff has failed to demonstrate an adverse action

Plaintiff claims that he was subjected to an adverse action because he was transferred from a prison in Michigan's Lower Peninsula (LCF) to a prison in Michigan's Upper Peninsula (URF). Defendants seek summary judgment because plaintiff cannot establish an adverse action. The Court agrees.

In his complaint, plaintiff alleged that the retaliatory transfer to the Upper Peninsula correctional facility was five hours from his loved ones, that the transfer affected his visitation privileges, that the correctional facility "is a riot status" facility, and that he has suffered emotional

and mental anguish. Compl. at PageID.5. For some of his relief, plaintiff seeks a transfer "to a facility that enables better visitation opportunities with his loved ones." *Id*. at PageID.6.

"[G]enerally, a transfer to another institution 'does not constitute an adverse action since a transfer is merely an ordinary incident of prison life.'" *Jones v. Caruso*, 421 Fed. Appx. 550, 553 (6th Cir. 2011), quoting *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir.2005). Because prisoners are expected to endure more than the average citizen and enjoy no protected right to remain incarcerated in a given correctional facility, a transfer from one prison to another generally will not be considered sufficiently adverse to deter a prisoner of ordinary firmness from engaging in protected conduct. *See Hix. v. Tenn. Department of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir. 2006) (stating that "this Court has held that in the context of a First Amendment retaliation claim, a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility"). Unlike the average citizen, an inmate cannot choose where he lives. Stated differently, "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). *See Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986) ("A prisoner has no inherent constitutional right to be housed in a particular institution, or to enjoy a particular security classification.") (internal citation omitted). Here, plaintiff was incarcerated in the general population as a Level II prisoner at LCF. *See* Transfer Order (ECF No. 10-8, PageID.185). While at URF, plaintiff was incarcerated in the same manner. *See* Deputy Warden Isard Aff. (ECF No. 10-9, PageID.188).

The Sixth Circuit has carved out a narrow exception, allowing a retaliatory transfer claim where foreseeable, negative consequences "inextricably follow" from the transfer. In

7

*Siggers-El*, the court found that a transfer would deter a person of ordinary firmness from engaging in protected conduct where the foreseeable consequences of the transfer inhibited the prisoner's ability to access the courts, i.e., the transfer would result in prisoner being unable to pay and meet with his attorney. *Siggers-El*, 412 F.3d at 702.

In opposing the motion for summary judgment, plaintiff filed a declaration in an attempt to show that this transfer involved exceptional circumstances stating in pertinent part:

> 16. Progress in the case of Heard, et al., v. Finco, et a., which I am a plaintiff in was stymied due to this transfer as we were no longer able to communicate and study law together.
>
> 17. Due to the transfer Plaintiff lost his high paying recreation porter job, which Plaintiff used to regularly purchase hygiene products that are no longer provided to prisoners free. This money was also used to supplement the food I could not eat due to my religious beliefs.

Plaintiff's Decl. (ECF No. 17-5, PageID.242-243).

As an initial matter, plaintiff's declaration was not properly verified under 28 U.S.C. § 1746. Rather than using the statutorily mandated language, i.e., "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct," plaintiff diluted this language stating, "I, **William Marquise Johnson**, pursuant to 28 U.S.C. § 1746 declare and state under penalty of perjury that everything stated herein is true to the best of my knowledge, information and belief." Decl. at PageID.243 (emphasis in original). Because the declaration does not state that the recited facts are "true and correct" under penalty of perjury as required by the statute, it is an unsworn statement based on information and belief which is insufficient to support a motion for summary judgment. *See Totman v. Louisville Jefferson County Metro Government*, 391 Fed.Appx. 454, 464 (6th Cir. 2010) (to constitute evidence sufficient to support or oppose a motion for summary judgment, an affidavit "must be made on

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated;" thus, a complaint which included a verification stating facts that are true and correct to the best of the affiant's "knowledge and belief" indicated that the allegations of the complaint went beyond the plaintiff's personal knowledge, that the allegations extended to matters within the plaintiff's "beliefs," and that the plaintiff's "beliefs" did not meet the evidentiary standard set forth in Fed. Rules Civ. Proc. 56(e)(1) (predecessor to Fed. Rules Civ. Proc. 56(c)(4)).

Even if plaintiff had set forth these facts in a properly executed affidavit, they are insufficient to establish foreseeable, negative consequences that inextricably followed from plaintiff's transfer. Plaintiff was transferred from one Level II facility to another Level II facility. While plaintiff stated that his transfer interfered with his lawsuit, prison work assignment, and ability to purchase items, every transferred prisoner can experience these kinds of disruptions. Here, the MDOC minimized plaintiff's disruptions by transferring him to a facility which accommodated his religious diet. "A transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights." *Jewell v. Leroux*, 20 Fed. Appx. 375, 378 (6th Cir. 2001). A prisoner's claim that the conditions at another prison are notoriously harsh is not sufficient to create a jury issue on the question of whether his transfer to that prison was an adverse action. *Colvin v. Foy*, No. 14-1456 (6th Cir. June 18, 2015) (unpublished order).

Furthermore, a transfer is not an adverse action if it is necessary for operational needs. *See Siggers-El*, 412 F.3d at 701-02 (a transfer is not retaliatory if it is necessary for operational needs such as disciplinary problems);*Ward v. Dyke*, 58 F.3d 271 (6th Cir.1995) (prison

9

officials could permissibly transfer a prisoner from one Level II facility to another in order to give staff a respite from plaintiff's continuous barrage of grievances); *Jewell*, 20 Fed. Appx. at 378 ("it is constitutionally permissible for prison officials to transfer an inmate to another prison to give prison staff a respite from his grievances").

Here, plaintiff's transfer order was related to the MDOC's operational needs. Upon request for a transfer from a facility, CFA Classification Specialist Scott would review, investigate and initiate a transfer when deemed necessary. Scott Aff. at PageID.171-172. "This process involves discussing the prisoner's needs with facility staff, reviewing the prisoner files, checking any correspondence received and then determining the appropriate placement for the prisoner based on security and programming needs in compliance with Department policy." *Id*. *See* MDOC Policy Directive 05.01.130 ¶A ("[w]hile there is no right to placement at a particular security level, prisoners shall be classified according to management and confinement requirements necessary for the protection of the general public, prevention of escape, maintenance of control, and the safety of staff and prisoners").

Classification Specialist Scott described plaintiff's situation as follows:

> URF Officials wanted to a transfer a Level II prisoner in lieu of confining that prisoner in protective segregation. Because the prisoner was also approved for kosher meals, transfer possibilities were restricted to other Level II facilities which offered religious meals. Eventually, URF worked out a prisoner trade with LCF involving Johnson. I subsequently approved the transfer as "a kosher/kosher trade."

Bernard Scott Aff. (ECF No. 10-8, PageID.172). *See* Transfer Order (noting that "Prisoner [plaintiff] being transferred to alternate Level II to accommodate a trade with URF. URF prisoner being transferred in lieu of protection. This is a kosher/kosher trade."). Viewing the evidence in the light most favorable to plaintiff, the Court concludes that he did not suffer the requisite adverse

action to support a claim of retaliation. Accordingly, defendants' motion for summary judgment should be granted on this basis.

### b. Inspector Vest was not a decision maker

Furthermore, Inspector Vest was not a decision maker with respect to plaintiff's transfer. In order to state a valid First Amendment retaliation claim, plaintiff must show that Inspector Vest had the ability and authority to take "adverse action" against him. *See Smith v. Campbell*, 250 F.3d 1031, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999). Stated another way, "[u]nder the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decisionmaker is at issue, that is, the plaintiff must show that the decision was motivated, in part, by the plaintiff's protected activity." *Smith*, 250 F.3d at 1038. In his affidavit, Inspector Vest stated that he had no authority to approve plaintiff's transfer or determine which facility he should be transferred to. Vest Aff. (Ecf No. 10-10, PageID.192). Rather, the LCF Transfer Coordinator would arrange the transfer and the Central Office Classification (CFA) would approve the transfer. *Id*. As discussed, plaintiff's transfer was approved by CFA Bernard Scott. *See* Scott Aff. at PageID.172, 185.

### 3. Plaintiff's request for a transfer is moot

Plaintiff's request for a transfer out of URF is moot, because he was transferred to LCF sometime prior to December 22, 2016. *See* Change of Address (ECF No. 19). *See Henderson v. Martin*, 73 Fed. Appx. 115, 117 (6th Cir. 2003) (prisoner's claim for injunctive relief against prison officials became moot when prisoner was transferred from the prison of which he complained to a different facility).

### 4. Qualified Immunity

Finally, defendants' brief includes a section on qualified immunity. When a defendant raises the issue of qualified immunity on summary judgment, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Although the plaintiff bears the ultimate burden, "[t]he defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id.* Defendants' cursory qualified immunity claim consists of a legal citations with the one-sentence argument "Defendants' actions, as described in Plaintiff's complaint, did not violate clearly established law." Defendants' Brief (ECF No. 10, PageID.76). Counsel's argument is utterly deficient. Accordingly, this claim should be denied.

### III. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (docket no. 9) be **GRANTED** and that this action be **TERMINATED**.

Dated: July 19, 2017         /s/ Ray Kent
                             RAY KENT
                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).